## M. E. COZAD v. S. H. McKEE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 31, 1889—Decided November 11, 1889.

(a) Defendant gave to plaintiff, for stock in a title insurance and trust company, a due-bill for an amount " to be paid only from the first dividends declared by the " company, the several payments to be indorsed thereon.

1. In such case, though no dividends were ever declared out of profits, but the company went into liquidation and distributed its assets to its shareholders, the defendant was liable to plaintiff for what he received upon his shares out of such assets.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 104 October Term 1889, Sup. Ct.; court below, No. 79 October Term 1887, C. P. No. 2.

On July 22, 1887, M. E. Cozad brought statutory assumpsit against S. H. McKee. The statement of claim filed and served with the writ set out certain facts and circumstances which were alleged to create a liability of defendant to plaintiff evidenced by the following writing:

$1,250.     October 23, 1883.    Due M. E. Cozad, twelve hundred and fifty dollars, which amount is to be paid only from the first dividends declared by the Title Insurance & Trust Company.   The several payments to be indorsed on this due-bill.

Shares, 100.                                    S. H. McKEE.

Issue having been joined, the cause was tried on November 13, 1888, and the case made sufficiently appears from the oral charge to the jury, WHITE, J.:

This action is based upon a due-bill given by the defendant to the plaintiff in October, 1883. It is not, however, an action to recover money upon it. The due-bill was for $1,250, to be paid out of the first dividends of the Title Insurance & Trust Company, being for 100 shares of stock in that company. On the face of the due-bill, the plaintiff could not sue and recover the $1,250, because it was not to be paid in money by the defendant. It specifies how it was to be paid, out of the dividends of that company. It is, however, the basis of this suit in this way: It is charged, and admitted in the evidence, that although the plaintiff never paid a cent on the due-bill, or for his 100 shares of stock, yet he received $900 in the way of dividends in the winding up of the company. He never received any dividends in the way of profits, because the company never made any profits; but, after continuing a year or so in business, it had to be wound up, and in the final dissolution the defendant received $9 a share, or $900, by way of dividends on his stock. The position of the plaintiff is this: that the defendant bought 100 shares of stock in the company from him for which he was to pay $1,250, to be paid out of the dividends of the company, and that he finally received $900 of the dividends and has never paid a cent for his stock; that according to the due-bill these dividends ought to be applied to the payment of the 100 shares as far as they go, and as the defendant received them he ought to hand them over to be credited on this note. The plaintiff never could recover the balance of the due-bill, and this claim of $900 is not as a part of the $1,250, but as money received by the defendant which the plaintiff ought to have received to be credited on this due-bill.

Now, that is the position of the plaintiff. You will remember the testimony, I will briefly refer to it, that Cozad, the plaintiff, had been in the business of the examination of real estate titles for a great many years, and had built up a considerable business. The defendant, McKee, and a partner by the name of Keeble, had been employees for a while, with Cozad, but afterwards set up for themselves. They had been in business for about six months, when Cozad suggested to them that they

unite in getting up a corporation in which they would take stock ánd quit their business. The corporation was organized with a capital stock of $135,000. That capital stock consisted of books and plans and papers belonging to Cozad, which he valued at $125,000. The other $10,000 of stock was to be a surplus for the company. The par value of the stock was $50 a share. He says he sold some of his stock: most of it was sold at $37 a share. He says that he proposed to the defendant and Keeble, his partner, that they take stock in this new company to be organized, and that he would as a favor to him, sell him 100 shares at one fourth of its par value, $12.50 a share, as he had done with some other employees in the office, being less than it would sell for in the market; that after some negotiations, as a further inducement to the defendant to go into this arrangement, he would give him 25 shares more for the good will of the business that he had started during the six months, and also give him 16 shares for his books and plans. [Mr. Cozad says that these 25 shares and the 16 shares, making 41 shares, were given for the good will of the business of McKee and Keeble, and for their books and papers, and that the 100 shares was an actual and unqualified purchase of the stock for the figures mentioned. Now if that be true, if that be the correct statement of the transaction between the parties, then it would be manifestly unjust on the part of McKee, after getting 41 shares of stock for the good will of his establishment and his books and papers, to retain the other 100 shares, having paid nothing for it, and retain the $900 that he finally received as a dividend on those 100 shares;][1] he would, of course, receive the same dividend on his 41 shares.

But the defendant gives us a different statement; he says that the 100 shares, the 25 shares and the 16 shares, were all part of one transaction. He first said that he had given another due-bill for the 25 shares at the same rate, $12.50 a share. Mr. Cozad says that no due bill was given for those shares. Most likely Mr. McKee is mistaken in his recollection as to the due-bill for those 25 shares. But I believe Mr. McKee still thought, when he was on the stand the last time, that he had given the due-bill. Mr. McKee says, however, that the whole of the stock, the 100 shares, as well as the 25 and the 16, were in consideration of his giving up his business and going into this new

establishment; and that he carried into the new house more business than the old establishment had.

Now, there is a direct contradiction between the testimony of Mr. McKee and Mr. Cozad, and it is right here that the question of fact that you have to pass upon arises. It is not to be presumed that either of these parties swore falsely intentionally, but you have to determine which you will give credence to; and, taking all the evidence into consideration, the reasonableness and the probability of it, as well as the accompanying circumstances, what was the actual transaction between these parties? [If the sale of 100 shares to McKee, for which this due-bill was given, was an actual bona fide sale of the stock, at the rate of $12.50 a share, and the 25 shares and the 16 shares additional were given for the good will of McKee and Keeble's business, and for their books and papers, then the 100 shares would be a purchase, as Mr. Cozad said; and if you find that to be the case from the evidence, then I say to you that the plaintiff is entitled to recover the $900 with interest on it from the time the defendant received it.] [2] On the other hand, if you believe that the consideration for the 100 shares was mainly and substantially the good will and business of McKee and Keeble, that the due-bill of $1,250 was only a part of the consideration for giving up their business, that the substantial consideration for giving up their business and going into this new firm was 100 shares of stock as well as 25 and 16 shares; and further, if you find that the distinct understanding between McKee and Cozad, as a part of the arrangement, was that the $1,250 was to be paid only out of the first dividends or profits of the new concern,—if you find that to be the substantial consideration for the giving up of their business, then I say to you your verdict ought to be for the defendant. I might add this additional remark, suggested by the plaintiff's counsel, that while this suit is not to recover the money on this due-bill yet the presumption is from the face of the due-bill that $1,250 was, the full consideration for the stock, and the burden of proof is on Mr. McKee to show that something else constituted a part of the consideration for its purchase.

The jury returned a verdict in favor of the plaintiff for $1,008. A rule for a new trial having been discharged, the defendant took this appeal, specifying that the court erred:

1, 2. In the portions of the charge embraced in [ ] **1 2**

3. In not submitting to the jury the determination of the sense in which the word " dividends " was used by the parties in the due-bill.

*Mr. A. W. Duff*, for the appellant.

Counsel cited: 1 Addison on Cont., 299; 1 Greenl. Ev., §§ 277, 278; Lockhart v. Van Alstyne, 31 Mich. 76 (18 Am. Rep. 156); Anderson's L. D., tit. Construction; Goddard v. Foster, 17 Wall. 142; Beardsley v. Hotchkiss, 30 Hun. 613.

*Mr. J. McF. Carpenter*, for the appellee.

Counsel cited: Williston v. Railroad Co., 13 Allen 404; Osgood v. Layton, 3 Abb. 423; University v. Railroad Co., 76 N. C. 105 (22 Am. Rep. 671); Jones etc. Mfg. Co. v. Commonwealth, 69 Pa. 139.

PER CURIAM:

This case turns upon the meaning of the word " dividends," contained in the note or due-bill sued upon. The note was to be paid only " from the first dividends declared by the Title Insurance & Trust Company." The defendant contends that it means dividends declared out of profits only. If such had been the language of the instrument, the case would have been free from difficulty. In point of fact there were no profits, and of course none could be divided. The company went into liquidation shortly after it commenced business, and the assets, from $25,000 to $30,000, were distributed among the shareholders. Of this, the defendant received $900; and the plaintiff contends, and the jury have so found, that to this extent defendant was liable to him upon the due-bill in question. We cannot give the word " dividend " the narrow construction claimed for it. There may be dividends out of profits, and there may be dividends out of insolvent estates. The one is as much a dividend as the other.

Judgment affirmed.